UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KHALIF ABDUL MATEEN,

      Plaintiff,

          v.                                CAUSE NO. 3:25-CV-299-CCB-SJF

L. SMITH, et al.,

      Defendants.

## OPINION AND ORDER

Khalif Abdul Mateen, a prisoner without a lawyer, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Mateen alleges that, on December 6, 2023, around 5:00 p.m., he was returning from recreation and walked into the staff office to retrieve a roll of toilet paper. As he was leaving, Lt. Walton (a female correctional officer) began to "horseplay" with Mateen by slapping the roll of toilet paper out of his hands. ECF 1 at 3. After a couple of times, Mateen became frustrated. As she bent over to pick up the toilet paper, he

grabbed Lt. Walton by the waist and tried to move her out of the way to obtain the toilet paper. He was later accused of "pelvis thrusting" Lt. Walton. *Id.*

Following the incident, Mateen was housed in a Special Management Cell ("SMC") for twelve days under conditions that Mateen describes as harsh and unsanitary. He was only permitted to wear a smock and his boxers, and he was monitored by camera. He was fed finger foods, and he could only drink water or flush the toilet with assistance from an officer. This meant that urine and feces were sometimes in the toilet for extended periods. He was not permitted to have a toothbrush, soap, pens, or eating utensils.

After the twelve days, Mateen was moved to a regular segregation cell. Approximately 60 days later, a screening order was served on him charging him with assault and battery on staff (a violation of offense A117) with serious bodily injury. Thirty days after that, a hearing was held before Lt. Draper. The charge was reduced to a non-consensual sexual contact on staff. He was found guilty and sanctioned with 90 days segregation and a 30-day loss of telephone privileges. He had already served 90 days in segregation, so he was moved to administrative segregation.

He appealed the finding of guilt. At the second level of appeal, his finding of guilt was vacated, and he was granted a rehearing. Mateen does not describe any shortcoming in the hearing process or indicate the basis for his appeal or the decision to vacate the finding of guilt.

The rehearing took place before Sgt. L. Smith. Mateen explained to Sgt. Smith that the charge had been lowered by Lt. Draper. He asked that video footage be

reviewed because none had been available at the first hearing. And, he explained that he had already served the 90 day sanction. Sgt. Smith found Mateen guilty of battery on an officer,[1] and claimed that video evidence supported the finding. Sgt. Smith sanctioned Mateen with 365 days in segregation and a 45-day loss of telephone privileges. Mateen appealed the guilty finding. On appeal, he argued that he should not have been found guilty of battery *causing serious bodily injury* because, according to Indiana Department of Correction ("IDOC") policy there must be a photo or other documentation of the injury to support the finding.[2] But a violation of A-117 does not require serious bodily injury where the sanction does not include forfeiting the balance of an inmate's good time credits. Both Warden Ron Neal and Executive Assistant Mark Newkirk were involved in the appeal, which was denied.

The Fourteenth Amendment provides state officials shall not "deprive any person of life, liberty, or property, without due process of law . . .." U.S. Const. amend. XIV, § 1. That said, due process is only required when punishment extends the duration of confinement or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484

---

[1] The Appendix to the IDOC's Adult Disciplinary Process defines an A-117 offense as "[c]omitting battery against a staff person, volunteer, independent contractor, or visitor." https://www.in.gov/idoc/files/ADP-Attachment-I-Offenses-3-1-2020.pdf (last visited January 27, 2026).

[2] A review of the current version of the IDOC's Disciplinary Code for Adult Offenders, which can be found at https://www.in.gov/idoc/files/02-04-101-ADP-3-1-2020.pdf (last viewed January 27, 2026), shows that an offender convicted of an A117 battery offense can lose all accumulated good time credit in addition to other sanctions. However, "to take the entire balance of the offender's accumulated earned credit time, if possible, photographs or other documentation of the bodily injury should be included as evidence to support a Report of Conduct alleging a violation of A117 or A115 or A100 involving bodily harm to a staff person[.]" *Id.* at 40-41. There is no indication in Matteen's complaint that the hearing officer found that Mateen caused a serious bodily injury.

3

(1995). In other words, "disciplinary segregation *can* trigger due process protections depending on the duration and conditions of segregation." *Jackson v. Anastasio*, 150 F.4th 851, 858 (7th Cir. 2025) (quoting *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697 (7th Cir. 2009) (emphasis in original)). Both the duration and the severity of the conditions themselves must be considered when determining whether the prisoner's placement in solitary confinement triggers due process protections—the length of time must be "substantial" and the conditions must be "unusually harsh." *Id*.

Similarly, while inmates do not generally have a liberty interest in "avoiding transfer to *discretionary* segregation—that is, segregation imposed for administrative, protective, or investigative purposes[,]" *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (emphasis added) (citing *Lekas v. Briley*, 405 F.3d 602, 608–09 & 608 n.4 (7th Cir. 2005), the same analysis applies with regard to duration and the harshness of the conditions. *See e.g.*, *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017) ("Prisoners do not have a constitutional right to remain in the general population, . . . but both the duration *and* the conditions of the segregation must be considered in determining whether due process is implicated.") (internal quotation marks, parenthesis, and citations omitted; emphasis in original); *Marion*, 559 F.3d at 697-98 & nn.2–3 (collecting cases that held segregation of two to ninety days does not trigger due process concerns and stating, "In a number of other cases, we have explained that a liberty interest may arise if the length of segregated confinement is substantial *and* the record reveals that the conditions of confinement are unusually harsh.") (emphasis added); *Lekas*, 405 F.3d at 612 (finding that up to ninety days in segregation does not affect liberty); *see also*

4

*Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (recognizing "duration" is a component that plays a part in determining whether a liberty interest exists). Once an inmate shows a particular non-disciplinary placement implicates a liberty interest, he has a right to a meaningful review, which periodically "evaluates the prisoner's current circumstances and future prospects, and, considering the reason(s) for his confinement to the program, determines whether that placement remains warranted.'" *Isby*, 856 F.3d at 527 (quoting *Toevs v. Reid,* 685 F.3d 903, 913-14 (10th Cir. 2012)).[3]

Even where due process protections apply, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The Fourteenth Amendment guarantees prisoners the following procedural due process rights in prison disciplinary hearings: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence in defense, when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563-73 (1974). To satisfy due process, there must also be "some evidence" in the record to support the guilty finding. *Superintendent, Mass Corr. Inst. v. Hill*, 472 U.S.

---

[3] Of note, "for any term of solitary confinement lasting more than days but less than years, qualified immunity will often apply to claims for damages. For segregation terms measured in months, even if an inmate's segregation amounted to a deprivation of a liberty interest, it is unlikely that prison officials could be held responsible for incorrectly guessing otherwise due to the ambiguity of the parameters of the law." *Jackson*, 150 F.4th at 858–59 (internal citation and quotation marks omitted). However, because qualified immunity is an affirmative defense, this question is best left to a later stage of the litigation.

445, 455 (1985). It is with this backdrop that the court considers whether Mateen is entitled to due process protections and, if so, whether he received those protections.

Mateen's initial placement in SMC for twelve days was too short to implicate due process concerns. The conditions he describes likewise do not rise to the level of an Eighth Amendment violation. "[T]he Constitution does not mandate comfortable prisons...." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Conditions that merely cause inconveniences and discomfort or make confinement unpleasant do not rise to the level of Constitutional violations. *Adams v. Pate*, 445 F.2d 105, 108-109 (7th Cir. 1971).

> Conditions of confinement must be severe to support an Eighth Amendment claim; "the prison officials' act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer* [*v. Brennan*, 511 U.S. 825, 834 (1994)] (*quoting Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). *See also, Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir. 1994) (the Eighth Amendment only protects prisoners from conditions that "exceed contemporary bounds of decency of a mature, civilized society."); *Jackson* [*v. Duckworth*,] 955 F.2d [21,] 22 [(7th Cir. 1992)].

*Morissette v. Peters*, 45 F.3d 1119, 1123 (7th Cir. 1995) (parallel citations omitted). Being required to wear only a smock and boxers, being monitored by camera, being limited to finger foods, requiring the assistance of an officer to obtain water or flush the toilet, and being denied a toothbrush, soap, pens, and eating utensils for twelve days is unpleasant, to be sure, but these conditions did not deny Mateen the minimum measure of life's necessities.

Mateen also complains about a variety of conditions while he was housed in D cell house. First, he complains that D cell house did not have an updated fire prevention

6

or sprinkler system in place. He asserts that one staff person has one key and, in the event of a fire, would need to unlock 33 separate cells on each tier with that key.

Mateen was also unhappy with how Ramadan meals were handled in D cell house. Inmates participating in Ramadan received only two meals a day, although a memorandum circulated in February 2025 indicated that the two meals were the equivalent of the three meals served to other inmates. Mateen disagrees. He asserts that inmates celebrating Ramadan receive repetitive meals of cold cut sandwiches and vegetables, with no access to a microwave to warm their meals, which sometimes have ice on them due to refrigeration. Instead of taking Ramadan meals, this year Mateen decided to save his lunch and dinner trays by putting them up until sunset, even though he knew that the food could spoil while sitting out for extended periods of time. It is unclear if Mateen would have received different options for Ramadan if he had been housed elsewhere or if this is how Ramadan meals are handled throughout the prison.

Mateen also complains that the prison serves an Easter Passover meal to everyone and a Jewish Passover meal to everyone, but Eid al-Fitr is neglected. But this does not appear to be an issue that is limited to D cell house.[4]

He also complains about problems with the grievance system in D cell house. Grievances are allegedly ignored or returned for minor errors, and grievance receipts

---

[4] To the extent these allegations suggest a violation of the Establishment Clause, Mateen cannot proceed because he has not alleged that any particular defendant is responsible for the alleged violation.

are not always provided. Again, it is unclear that these problems are limited to D cell house.

These allegations, either standing alone or taken together, do not support a finding that Mateen endured an atypical or significant hardship in relationship to the ordinary incidents of prison life while he was housed in D cell house. Therefore, he may not proceed on a due process claim based on his placement in D cell house following disciplinary proceedings where he was found guilty.

Likewise, it cannot be plausibly inferred from the allegations in Matteen's complaint that conditions in D cellhouse violated the Eighth Amendment. Being housed in a facility that does not have an updated fire prevention system does not exceed contemporary bounds of decency.

His allegations regarding the meals provided to inmates participating in Ramadan likewise do not violate the Eighth Amendment. "Prisoners have a right to adequate food, but not to food that is tasty or even appetizing." *Isby*, 856 F.3d at 522 (*quoting Williams v. Berge*, 102 F. App'x 506, 507 (7th Cir. 2004)). Mateen does not allege that consuming the food provided for Ramadan violated his religious beliefs; he alleges only that he found it lacking in variety and undesirable. This does not amount to a constitutional violation.

While Mateen faults Alicia Wildfang for the shortcomings in the grievance system, he has no constitutional right to access the grievance process. *See Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008) (noting that there is not a Fourteenth

8

Amendment substantive due process right to an inmate grievance procedure).
Therefore, he cannot proceed against Alicia Wildfang,

Finally, even if, considering the length of time Mateen was housed in D-cell house, due process rights were required, Mateen hasn't alleged that any of the due process guarantees set forth in *Wolff* were lacking. He received advance written notice of the charges and an opportunity to be heard before an impartial decision-maker. He has not presented any facts suggesting he lacked an opportunity to call witnesses and present documentary evidence in his defense. He has not presented any facts suggesting that he did not receive a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. It appears that he did, because he indicates that the hearing officer asserted that the video evidence supported the finding of guilt.

Due process requires that there must also be "some evidence" in the record to support the guilty finding. *Superintendent, Mass Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). Mateen has not argued that the guilty finding was not supported by any evidence. He complains only that there was no picture or documentation of an injury to the officer, but due process does not require this. At most, this is a violation of IDOC's policy, but "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices." *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003). Furthermore, as noted earlier, the IDOC's policy provides that a picture of documentation is required *when all good time is taken away*, and Mateen was not sanctioned with a loss of good time credit.

This complaint does not state a claim for which relief can be granted. If Mateen believes he can state a claim based on (and consistent with) the events described in this complaint, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) **GRANTS** Khalif Abdul Mateen until **March 2, 2026**, to file an amended complaint; and

(2) **CAUTIONS** Khalif Abdul Mateen that, if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on January 28, 2026.

/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT